Eastern District of Kentucky
FILED

MAR 2 3 2006

AT LEXINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION

| | |
|---|---|
| W2005 WYN Hotels, L.P. ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> Lexington Center Corporation, ) <br> ) <br> Defendant. ) <br> ) <br> SERVE: William B. Owen, ) <br> Registered Agent ) <br> 430 W. Vine St. ) <br> Lexington, KY 40507 ) <br> ) | Civil Action No. 06-75-JMH |

## COMPLAINT AND PETITION FOR DECLARATORY JUDGMENT
## AND BREACH OF CONTRACT

### Introduction

1.     W2005 WYN Hotels, L.P. ("W2005"), as and for its complaint against Lexington Center Corp. ("LCC"), alleges and demands judgment as follows:

### Parties

2.     W2005 WYN Hotels, L.P. is a limited partnership formed and existing under the laws of Delaware, with its principal place of business in New York, New York. None of the partners of W2005 is an individual resident or citizen of Kentucky and none of the partners of W2005 is a corporation that is organized under the laws of Kentucky or that has its principal place of business in Kentucky. W2005 is not a citizen of Kentucky.

3.     Lexington Center Corporation is a not-for-profit corporation formed and existing under the laws of Kentucky, with its principal place of business in Lexington, Kentucky.

## Jurisdiction And Venue

4. The parties are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

5. This Court is a proper venue because LCC resides in this District and W2005's claim against LCC arose in this District.

6. An actual controversy has arisen and exists between W2005 and LCC concerning a certain lease between them, as more particularly described below.

## Factual Allegations

7. On or about May 22, 1996, LCC, as lessor, entered into an Amended and Restated Lease (the "Lease") with Patriot American Hospitality Partnership, L.P., a Virginia Limited Partnership ("Patriot"), as lessee, of certain premises (the "Hotel") currently occupied by the Hyatt Regency Lexington Hotel (the "Hotel"). A copy of the Lease is attached as **Exhibit A**. On May 23, 1996, the Lease was recorded at Deed Book 1848 Page 522 in the records of the Country Court Clerk of Fayette County, Kentucky. The term of the Lease is thirty years from May 1, 1997, with the lessee having the option to renew for six additional terms of ten years each, on the terms and conditions set forth in the Lease.

8. W2005 is the current lessee under the Lease.

9. On or about February 24, 2006, LCC, as lessor under the Lease and by William B. Owen ("Owen"), its President and CEO, sent a letter to W2005 (the "Default Letter"), contending that W2005 is in default under the Lease because it is purportedly in breach of ParagraphS II.D, III.B.2, and III.D of the Lease. A copy of the Default Letter is attached as **Exhibit B**. The letter stated that, for reasons stated in a letter dated December 13, 2005, the physical condition of the Hotel fails to satisfy the requirements of Paragraphs II.D, III.B.2, and

2

III.D of the Lease. In the letter, Owen admitted to having consulted with "local business leaders and governmental officials with regard to this matter." The letter concluded by stating that it constitutes "written notification to you under Paragraph III.M of the Lease that [W2005] is in breach of the covenants and conditions of the Lease as herein described. Be advised that the Lease will be terminated pursuant to Paragraph III.Q should [W2005] fail to act diligently to cure these breaches. [W2005] should be forewarned that any effort to impede LCC's ability to terminate the Lease, whether by legal action or otherwise, will eliminate [W2005]'s protections under the Lease regarding liquidated damages."

10. Paragraph III.R of the Lease, deals with, among other things, liquidated damages, and, contrary to Owen's statement, makes no reference whatsoever to any lessee "efforts to impeded LCC's ability to terminate the Lease, whether by legal action or otherwise" as stated in the Default Letter. W2005 has not waived any of its legal rights under the Lease or at law or in equity to seek a legal determination that it is not in violation of the Lease or to protect its rights thereunder.

11. Prior to the Default Letter, Owen was advised and placed on notice that W2005 was preparing imminently to market the Hotel. Owen has stated that he and LCC were interested in arranging for a "local investor" or investors to purchase the Hotel. Owen has also stated the LCC would withhold an "estoppel letter" in the event of a sale of the Hotel, which would have the intended effect of preventing such a sale. Owen's threats serve no valid commercial purpose of LCC, and indeed undercut them, but have the effect of threatening significant damage to W2005. These facts too constitute a breach of the covenant of good faith and fair dealing implied in every contract.

3

12. The Default Letter contained no statement of facts concerning the quality of the Hotel operation, improvements, premises conditions, furniture, fixtures and equipment. Rather, it relied on a prior letter, dated December 13, 2005, which stated that the "guest rooms and common areas are in no better condition than they were, and the banquet catering services required under the lease agreement has [sic] been at best, inconsistent." A copy of the December 13, 2005 letter is attached as **Exhibit C**. Thus, even LCC admitted that the condition of the Hotel was no worse than it had been in the past when no default was declared. The letter referred to complaints that LCC and the Lexington Mayor have received but failed to note a number of praiseworthy statements that LCC and others have made about the hotel, including the LCC website, which calls the hotel a "jewel." While the letter recited complaints about certain carpeting and the elevators, among other things, taken together, the facts stated in the letter do not demonstrate that the Hotel is out of compliance with the specific and objective requirements of the Lease.

13. In any event, as LCC has been advised, the Hotel has been improved substantially in the past year and further improvements are ongoing.

14. On or about March 9, 2006, counsel for W2005 sent a letter to LCC disputing the factual and legal bases for the Default Letter and demanding that it be rescinded. A copy of the March 9, 2006 letter is attached as **Exhibit D**. As noted in this letter and prior correspondence and communications, W2005 had made and is continuing to make improvements to the Hotel. In particular, in only one year since W2005 acquired the Hotel in early 2005 it has invested over $750,000.00 in capital improvement to the Hotel (including substantial room and guest corridor design work) and has committed to invest an additional $375,000 within the next month. The March 9, 2006 letter also noted that Hyatt's guest satisfaction ratings for the Hotel over the same

4

period have been consistently high, and that the Hotel was ranked among the top 20 of same-market Hyatt convention hotels in overall guest satisfaction, as well as in the categories of overall food and beverage, customer service, and cleanliness of rooms.

15. The proposed upgrading of the overall condition of the hotel is ongoing and cannot occur within thirty days but is being diligently pursued.

16. The quality of the Hotel has improved over the past year. LCC did not issue a default notice to the prior operators and owners of the Hotel concerning the quality of the Hotel.

17. The timing of the Default Letter directly correlates with the proposed sale of the Hotel and hinders W2005's ability to consummate the sale at the same price it would be able to receive if the Default Letter had not been issued.

18. While LCC may prefer a different, local operator, or different conditions at the Hotel, its rights are circumscribed by and contained in the written Lease, and it is not free to violate W2005's rights thereunder.

**Count One**

**(Declaratory Judgment)**

19. Each and every one of the foregoing allegations is incorporated in this count as if fully set forth herein.

20. The standards of the Lease for the quality of the Hotel and its operation are objective, not subjective, and are expressly set forth in the Lease. Paragraph II.D of the Lease provides that the lessee must operate the hotel and related activities in a "quality and reputable manner." Paragraph III.B(2)(b) requires that the Hotel improvements be kept "in good repair." Paragraph III.D requires that the lessee "keep and maintain the Lease Premises in good condition consistent with the operation of a quality, full service hotel." It also requires that furniture,

5

fixtures and equipment be "<u>of good quality</u>, taking into consideration its use in connection with the adjacent civic facilities."

21. W2005 is in compliance with the standards set forth in the Lease. LCC, however, has unjustly declared W2005 to be in default.

22. There is an actual controversy between W2005 and LCC whether W2005 has breached the Lease as claimed in the Default Letter.

23. W2005 is entitled to and prays for a declaration that W2005 has not breached the Lease as claimed in the Default Letter.

## Count Two

### (Breach of the Lease)

24. Each and every one of the foregoing allegations is incorporated in this count as if fully set forth herein.

25. Paragraph III.R of the Lease permits, but does not require, LCC as lessor under the Lease to give notice to the lessee "in the event that Lessor determined that Lessee is in default...." The same paragraph states that "if any such breach cannot reasonably be cured within thirty (30) days (except for a default in any payments due under this Lease) such additional time as may be necessary to cure such breach, provided Lessee is proceeding diligently to cure such alleged breach..." before Lessor may be entitled to pursue its remedies.

26. The Lease also incorporates the covenant of good faith and fair dealing implied in every contract.

27. The Lease does not give the lessor the unilateral power to set artificial requirements or make unreasonable demands as to the amount of additional time as may be necessary to cure any alleged breach.

28. The Lease also does not take away W2005's rights to commence legal action to protect its interests or determine its rights. The Default Letter's warning that "any effort to impede LCC's ability to terminate the Lease, whether by legal action or otherwise, will eliminate [W2005]'s protections...." constitutes a commercially unreasonable threat in breach of the covenant of good faith and fair dealing implied in every contract

29. W2005 is proceeding diligently to address various concerns of LCC, subject to and without waiving W2005's contentions that it is not in breach of the standards set forth in the Lease. None of these can be addressed in thirty days and many are expected to be completed by the purchaser of the Hotel.

30. In violation of the Lease, and in breach of the covenant of good faith and fair dealing, LCC has issued a default notice without substantial justification in light of the course of dealing concerning the Hotel and with the apparent purpose of gaining improper and commercially unreasonable advantage over W2005 by harassment and oppression in threatening W2005's ability to sell the Hotel, or to serve separate commercial interests of an as-yet unnamed "local investor."

31. W2005 faces the threat of immediate, irreparable harm, with no adequate remedy at law, in addition to damages, unless LLC refrains, or is made to refrain, from its unlawful conduct.

### Relief Requested

WHEREFORE, W2005 respectfully requests this Court to enter judgment awarding W2005 the following relief:

A. Enter an order finding and declaring that W2005 is not in default of the Lease, as alleged in the Default Letter, and that the Default Letter is null, void, and of no force and effect;

B.   Award W2005 preliminary and/or permanent injunctive relief barring LCC from taking further actions in violation of the Lease and the covenant of good faith and fair dealing with respect to the Default Letter;

C.   Award W2005 the recovery of its costs and attorney's fees incurred herein to the extent allowed by applicable law; and

D.   Award W2005 such other and further relief and/or damages as the Court deems just and reasonable.

Dated: March 23, 2006

FROST BROWN TODD, LLC

By: /s/ Charles S. Cassis

Charles S. Cassis
Theresa A. Canaday
400 West Market Street, 32nd Floor
Louisville, Kentucky 40202-3363
Phone: (502) 589-5400
Fax:   (502) 581-1087

*Attorneys for W2005 WYN Hotels, L.P.*

Of Counsel:

Hunter T. Carter
ARENT FOX PLLC
1675 Broadway
New York, New York 10019
(212) 484-3900